Entered on Docket
October 29, 2008

_____
**Hon. Bruce A. Markell**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

\* \* \* \* \* \*

| | | |
|---|---|---|
| In re: | ) | |
| JOHN L. SMITH, | ) | BK-S-07-16504-BAM |
| | ) | |
| Debtor. | ) | Chapter 7 |
| _____ | ) | |
| | ) | |
| SHELDON G. ADELSON, | ) | Adversary No. 08-01012-BAM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Date:        Oct. 20, 2008 & Oct. 27, 2008 |
| | ) | Time:        10:00 a.m. & 1:00 p.m. |
| JOHN L. SMITH, | ) | Courtroom: 3 |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**OPINION REGARDING PLAINTIFF'S MOTION FOR STAY PENDING APPEAL**

Before the court is a Motion for Stay Pending Appeal (doc. 133) ("Motion for Stay") filed by Sheldon G. Adelson. The Motion for Stay relates to this court's "Order Regarding Production of Nevada Gaming Control Board Records" (doc. 124) ("Subpoena Compliance Order"), which Adelson appealed to the United States District Court for the District of Nevada on October 17, 2008. As detailed in the court's 14-page "Opinion Requiring the Nevada Gaming Control Board to Comply Partially with John L. Smith's Subpoena Duces Tecum re: Deposition" (doc. 123) ("Subpoena Compliance Opinion"), the court has ordered the Nevada Gaming Control Board to release a limited number of pages from documents held in the Board's custody. Adelson seeks a stay of the Subpoena Compliance Order pending the outcome of the appeal. For the reasons set forth below, the court denies Adelson's Motion for Stay.

**FACTUAL BACKGROUND**

In this adversary proceeding, Adelson asserts that the debtor, John L. Smith, made libelous statements concerning Adelson in a book Smith wrote entitled *Sharks in the Desert*, and Adelson seeks to have the liability arising from such libelous statement be declared nondischargeable in bankruptcy.[1] As part of this proceeding, counsel for Smith subpoenaed certain documents held by the Board, and after the Board refused to produce them, Smith filed a "Motion to Compel Release of Nevada Gaming Records" (doc. 88) ("Motion to Compel"). After a hearing on the Motion to Compel, the court ordered an in camera review of the only two documents held by the Board–the application for a gaming license made by the Las Vegas Sands, Inc., a company for which Adelson was the principal (the "Application"), and an investigative report made by the Board relating to the Application (the "Report"). The authority for conducting the in camera review and the process employed by the court is explained in the Subpoena Compliance Opinion. Ultimately, the court did not order production of any part of the Report. Seven pages of the Application (four unredacted pages and three redacted pages) were ordered produced by the Subpoena Compliance Order.

**STANDARD OF DECISION**

Federal Rule of Bankruptcy Procedure 8005 governs granting a stay pending appeal. The rule states:

> Notwithstanding Rule 7062 but subject to the power of the district court and the bankruptcy appellate panel reserved hereinafter, the bankruptcy judge may suspend or order the continuation of other proceedings in the case under the Code or make any other appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest.

This is a request for equitable relief and requires the application of essentially the same standards as applicable under FED. R. CIV. P. 62(c) (relating to injunctions pending appeal). See generally Acton

---

[1] The factual history and procedural background of this litigation are set forth in the court's prior opinion, Adelson v. Smith (*In re* Smith), 389 B.R. 901 (Bankr. D. Nev. 2008).

v. Fullmer (In re Fullmer), 323 B.R. 287, 292 (Bankr. D. Nev. 2005) (citing several cases applying these standards). There are thus four elements to consider: (1) Plaintiff's likelihood of success on the merits; (2) whether Plaintiff will be irreparably injured; (3) whether issuing the stay will substantially injure Defendant; and (4) where the public interest lies. See id. at 292-93. "In applying these factors, the court is mindful that a discretionary stay pending appeal is viewed as an extraordinary remedy." Id. at 293 (citing Minor Metals, Inc. v. United States, 38 Fed. Cl. 379 (1997)).[2]

## DISCUSSION OF EQUITABLE RELIEF FACTORS

### A. Adelson's Likelihood of Success on the Merits

The first element the court must weigh is Adelson's likelihood of success on the merits. The court identifies four factors that affect the Adelson's likelihood of success on the merits of the appeal:[3]

- First, the court's Subpoena Compliance Order is an interlocutory discovery order that may not be appealed as of right.

- Second, Adelson waived statutory and other privileges, and this will affect his likelihood of success on appeal.

- Third, the extent to which Adelson failed to preserve matters for appeal negatively affects his likelihood of success on the merits.

- Finally, the fourth factor looks to the merits and the extent to which the court may have

---

[2] Adelson did not move under either FED. R. BANKR. P. 9023 or 9024 (incorporating FED. R. CIV. P. 59 and 60) for this court to reconsider its findings. As a result, the court may not revisit its findings, and does not disturb what has already been decided.

[3] In making a determination on this element, the court is cognizant of the fact that on appeal, the reviewing court will evaluate this court's weighing of evidence under an abuse of discretion standard. FED. R. BANKR. P. 8013; Wall Street Plaza, LLC v. JSJF Corp. (In re JSJF Corp.), 344 B.R. 94, 99 (9th Cir. BAP 2006). Where applicable, the court will take this fact into account in evaluating Adelson's likelihood of success on the merits.

erred in applying the law with regard to the Motion to Compel and the subsequent

Subpoena Compliance Order.

Adelson argues this court may not consider procedural infirmities related to the appeal in assessing his likelihood of success. Adelson believes it is improper for this court to consider issues such as whether the Subpoena Compliance Order was properly appealed, whether a waiver of any applicable privilege occurred, and whether there was a failure to preserve issues of privilege for purposes of appeal. This court disagrees with Adelson's interpretation of the law governing motions for stay pending appeal, and Adelson cites no authority for his view that such procedural infirmities may not be considered by this court. This is not an attempt by this court to determine the jurisdiction of the reviewing court, as Adelson contends. The court will therefore consider these procedural infirmities in estimating Adelson's probability of success on appeal. See, e.g., Turner v. Frascella Enterprises, Inc. (In re Frascella Enterprises, Inc.), 388 B.R. 619 (Bankr. E.D. Pa. 2008). The court now addresses each factor relevant to this element.

### 1. Interlocutory Nature of the Subpoena Compliance Order

Adelson has taken an interlocutory appeal of the court's Subpoena Compliance Order. In ascertaining Adelson's probability of success on his appeal of this discovery order, the court must consider whether the reviewing court will find that this appeal is properly before it. Upon review of the relevant Ninth Circuit case law, the court believes the appeal is without justification and will be dismissed. Newton v. National Broad. Co., Inc., 726 F.2d 591 (9th Cir. 1984).

In Newton, the Gaming Control Board sought an appeal from an order directing it to release certain records pertaining to Wayne Newton's gaming license application. Id. at 592. As in this case, the applicant, Newton, had brought suit for defamation after being linked to an organized crime figure, and the defendant sought production of records held by the Board. Id. The Ninth Circuit did not reach the issue of whether the order compelling release of control board documents was properly made because the court found jurisdiction was lacking. Id.

The Newton court explained that the general rule is that an order regarding discovery is not an

4

appealable final order. Id. In that case, the court addressed the argument that Adelson has advanced in the present case–the rule should be different when dealing with a nonparty governmental entity because such an entity will not risk contempt to create a final, appealable order. See Newton, 726 F.2d at 592. The Ninth Circuit refused to enact such an exception. Id. at 593.

Therefore, the court does not believe that a reviewing court will find that the Subpoena Compliance Order was properly appealed. This will decrease the probability that Adelson will be successful on appeal, and the court gives this due weight in its consideration of the first element necessary for Adelson to establish a right to a stay pending appeal.

### 2. Waiver of Applicable Privileges

As part of his argument that Adelson has established the probability of success on the merits of his appeal, Adelson discusses the applicable privileges provided by Nevada law. Adelson raises the "absolute privilege" contained in NEV. REV. STAT. § 463.3407 and the privilege provided by NEV. REV. STAT. § 49.025 (the "return/report" privilege).[4]

NEV. REV. STAT. § 463.3407, entitled "Absolute Privilege of Certain Communications and Documents; Restrictions On and Protections Against Disclosure," provides:

> 1. Any communication or document of an applicant or licensee, or an affiliate of either, which is made or transmitted to the Board or Commission or any of their agents or employees to:
>> (a) Comply with any law or the regulations of the Board or Commission;
>> (b) Comply with a subpoena issued by the Board or Commission; or
>> (c) Assist the Board or Commission in the performance of their respective duties,
>
> **is absolutely privileged and does not impose liability for defamation or constitute a ground for recovery in any civil action.**
> 2. If such a document or communication contains any information which is privileged pursuant to chapter 49 of NRS, that privilege is not waived or lost because the document or communication is disclosed to the Board or Commission or any of its agents or employees.
> 3. Notwithstanding the provisions of subsection 4 of NRS 463.120:
>> (a) The Board, Commission and their agents and employees shall

---

[4] The extent to which Adelson's assertion of these privileges was not properly preserved for purposes of appeal is discussed in the next section of this opinion.

not release or disclose any information, documents or communications provided by an applicant or licensee, or an affiliate of either, which are privileged pursuant to chapter 49 of NRS, without the prior written consent of the applicant, licensee or affiliate, or pursuant to a lawful court order after timely notice of the proceedings has been given to the applicant, licensee or affiliate.
(b) The Board and Commission shall maintain all privileged information, documents and communications in a secure place accessible only to members of the Board and Commission and their authorized agents and employees.
(c) The Board and Commission shall adopt procedures and regulations to protect the privileged nature of information, documents and communications provided by an applicant or licensee, or an affiliate of either.

(emphasis added). The other privilege asserted by Adelson in the Motion for Stay is NEV. REV. STAT. § 49.025, which provides:

1. A person making a return or report required by law to be made has a privilege to refuse to disclose and to prevent any other person from disclosing the return or report, if the law requiring it to be made so provides.

At the hearing on the Motion to Compel, before either the in camera review or production of the Application was ordered, the Board argued that the privilege provided by NEV. REV. STAT. § 463.3407 is absolute in the sense that it applies so long as the holder of the privilege has not waived it. Sept. 30 TR, pp. 22:8-18; 23:4-6. The Board stipulated that Adelson is the holder of the privilege in this case.[5] Id. at 23:4-6.

However, in Adelson's Opposition to the Motion to Compel, Adelson did not assert his rights under the "absolute privilege." As a result, at the September 30 hearing, the court asked counsel for Mr. Adelson the following question: "Are you asserting an absolute privilege or is Mr. Adelson asserting an absolute privilege under 463.3407 at this point?" Sept. 30 TR, p. 46:3-5. Adelson's

---

[5] The court was not convinced that the Board could not assert the privilege once Adelson had waived it (indeed, the Board did assert the privilege notwithstanding Adelson's waiver), and accordingly the court gave due consideration to the interest of the Board when crafting the procedure used for the in camera review. This procedure is explained in the Subpoena Compliance Order.

6

counsel responded: "No." Sept. 30 TR, p. 46:6. This indicated to the court that Adelson was waiving

any privileges he held with respect to the documents held by the Board. At the October 27 hearing

on the Motion for Stay, counsel for Adelson attempted to recast this waiver as a "red herring" and

claim that all privileges relating to the Application remained intact. The court finds that this "red

herring" argument has no basis in fact or law and notes that it contradicts the arguments Adelson

made in the papers he filed relating to the Motion for Stay.

Even absent a waiver, the court does not court believe that section 463.3407 provides Adelson

with any protection. See Subpoena Compliance Opinion. But even if it did, Adelson's on the record

waiver of the privilege substantially damages his argument for likelihood of success on appeal.

Adelson's Motion for Stay seems to anticipate this in a footnote, which states:

> We are mindful that the Bankruptcy Court's order concludes that the attorney representing Adelson at the hearing on September 30, 2008, waived the protections of NRS 463.4307 [sic]. Even if there was such a waiver, Adelson cannot be said to have waived the privilege under NRS 49.025 which remains intact pursuant to NRS 463.120 and NRS 463.3407.

Pl. Mot., p. 5 n.1. The court will assume for purposes of this opinion that section 49.025 is

applicable to the documents referenced in the Subpoena Compliance Order.[6] Nonetheless, Adelson's

---

[6] The court is mindful that the only disclosures actually compelled were of the Application made to the Gaming Control Board. Adelson has not demonstrated that an application for a gaming license was a "return or report required by law" within the meaning of section 49.025. Cases interpreting statutes using the "return/report" language generally refer to tax returns or other reports that individuals or companies are compelled to file by law. See, e.g., Elliott v. Montana Dept. of Revenue, 334 Mont. 195, 146 P.3d 741 (2006) (tax returns); Tharp v. Sivyer Steel Corp., 149 F.R.D. 177 (S.D. Iowa 1993) (disclosure documents prepared by an employer in compliance with federal equal employment opportunity laws); In re Domestic Air Transp. Antitrust Litigation, 141 F.R.D. 556 (N.D. Ga. 1992) (Civil Investigative Demands issued in civil antitrust investigations by the United States Department of Justice); In re Valecia Condensed Milk Co., 240 F. 310, 310-11 (7th Cir. 1917) (tax returns); In re Reid, 155 F. 933, 934 (E.D. Mich. 1906) (requiring property owners to file a report of all property owned). Although an application is necessary to receive a Nevada gaming license, it differs in character from the returns and reports that such "return/report" privilege statutes are usually applied to. The court is accordingly wary to enlarge the scope of privileges which exclude evidence. See Grand Jury Impaneled January 21, 1975, 541 F.2d 373, 382 (3d Cir. 1976) ("[B]ecause privileges are in

invocation of NEV. REV. STAT. § 49.025 in the Motion to Compel does not increase his probability of success on appeal.

First, it is unclear whether section 49.025 is an independent ground of privilege, or whether it is incorporated or subsumed into the privilege granted by section 463.3407. If it is not an independent ground to claim a privilege, the court deems it was waived at the September 30 hearing on the Motion to Compel when Adelson's counsel waived the privilege provided by section 463.3407. If section 49.025 is an independent ground to claim a privilege, it has been waived in any event by Adelson's failure to raise it prior to this Motion for Stay.

Federal Rule of Evidence 501 (applicable to this proceeding under FED. R. BANKR. P. 9017) specifies that where state law provides the rule of decision, substantive state privilege law will govern. Laxalt v. McClatchy, 109 F.R.D. 632, 635 (D. Nev. 1986). However, whether a waiver of any applicable privilege has occurred in a procedural issue governed by interpretation of the Federal Rules of Civil Procedure, making federal law the governing law as to waiver and failure to preserve issues for appeal. See Hanna v. Plumer, 380 U.S. 460 (1965), see also Sain v. City of Bend, 309 F.3d 1134, 1137 (9th Cir. 2002). In the Ninth Circuit, a determination of whether a party's conduct constitutes a waiver must be made on a case-by-case basis, subject to a "holistic reasonableness analysis." Burlington Northern & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont., 408 F.3d 1142, 1149 (9th Cir. 2005).

Adelson had numerous opportunities to raise a claim of privilege under section 49.025 before the court entered the Subpoena Compliance Order. Adelson failed to make such a claim in his opposition to the Motion to Compel (doc. 94). Adelson also failed to make that claim at the September 30, 2008 hearing on the Motion to Compel and at the October 10, 2008 hearing following the in camera review. Therefore, Adelson's failure to raise a claim of privilege under

---

derogation of the search for truth, 'these exceptions to the demand for every man's evidence are not lightly created nor expansively construed.'" (quoting United States v. Nixon, 418 U.S. 683, 710 (1974)).

section 49.025 before the Motion for Stay was unreasonable and constituted a waiver of any privilege that section might have conferred with respect to the Application.

The court therefore finds Adelson waived any assertable claim of privilege with respect to the documents held by the Board. Therefore, in the court's decision on Adelson's Motion for Stay, the court has given this factor due weight in its determination of Adelson's probability of success on the merits of his appeal.

### 3. Failure to Preserve Privilege Issues for Purposes of Appeal

One factor that could detrimentally affect Adelson's chances of success on appeal is the extent to which issues raised on appeal were not raised before this court. In this circuit, the law is clear that a party may not raise an issue for the first time on appeal. Franchise Tax Bd. v. Roberts (*In re Roberts*), 175 B.R. 339, 344-45 (9th Cir. BAP 1994) (citing Rothman v. Hosp. Serv. of S. Cal., 510 F.2d 956, 960 (9th Cir. 1975)). A party must raise an objection to a matter in the lower court. Id. There is not a "bright-line rule" in this circuit for what constitutes raising an issue. O'Rourke v. Seaboard Surety Co. (*In re* E.R. Fegert, Inc.), 887 F.2d 955, 957 (9th Cir. 1989). However, the Court of Appeals has instructed that "[a] workable standard . . . is that the argument must be raised sufficiently for the trial court to rule on it." Id.

At the September 30 hearing on the Motion to Compel, the court noted that Adelson had not raised a claim of privilege under Nev. Rev. Stat. § 463.3407 in the papers he filed in opposition to the Motion to Compel. Counsel for Adelson then expressly stated that Adelson was not asserting a privilege under section 463.3407. Since Adelson was not claiming the 463.3407 privilege (or any other privilege), the court did not make a ruling on the issue at the September 30 hearing.

At the October 10 hearing on the Motion to Compel, the parties were asked to state their objections. Counsel for Adelson made three objections. Adelson's main objection was stated as follows:

> Our objection goes through the initial concept that we don't believe that any of the documents should be produced based on the privacy concerns and the concerns of the prejudice to my client by submitting

9

1

documentation to the Nevada Gaming Control Board, and that we
believe under the <u>Laxalt</u> case that none of the documents should be
provided.

2

3

Oct. 10 TR, p. 8:18-24. Adelson also objected to the court's jurisdiction and to the fact that the

4

discovery cutoff date had passed.[7] Adelson's objection based on "privacy concerns," "prejudice,"

5

and "the <u>Laxalt</u> case" were not sufficiently specific for the court to consider them as raising the issue

6

of a privilege under either cited privilege statute.[8] Therefore, the court did not have an opportunity to

7

rule on a claim of privilege under either statute based on objections made by Adelson at the October

8

10 hearing. Likewise, contrary to Adelson's objections at the October 27 hearing on the Motion for

9

Stay, these objections did not sufficiently raise a more abstract claim of "privilege" for the court to

10

rule on it prior to the court's decision on the Motion to Compel.

11

The court concludes that Adelson failed to raise the issue of privileges granted by Nev. Rev.

12

Stat. §§ 463.3407 and 49.025 such that the court could rule on them before making a determination

13

on the Motion to Compel. Therefore, the court believes the issue of privileges granted by these

14

statutes will not be properly before the court hearing the appeal. Since the reviewing court will not

15

hear the privilege argument, this will detrimentally affect Adelson's probability of success on

16

appeal, and as such, the court gives this factor due weight in deciding whether to grant the relief

17

requested by the Motion for Stay.

18

19

_____

20

[7] The court's jurisdiction over this proceeding was resolved in <u>Adelson v. Smith</u> (<u>In re</u> Smith),

21

389 B.R. 901 (Bankr. D. Nev. 2008). The discovery deadline objection was overruled by the court on
the grounds that Adelson's dilatory tactics were the cause of the Motion to Compel being brought so

22

close to the discovery deadline, and therefore the court took the discovery of the documents that were
the subject of the Motion to Compel to be within the discovery deadline. In making that ruling, the

23

court noted that it was not generally extending the discovery deadline, and no further discovery would
be allowed based on information revealed in any documents ordered to be produced as a result of the

24

Motion to Compel. <u>See</u> Subpoena Compliance Opinion, p. 13 n.16.

25

[8] There are two <u>Laxalt</u> cases. <u>Laxalt v. McClatchy</u>, 109 F.R.D. 632 (D. Nev. 1986) (<u>Laxalt I</u>)

26

and <u>Laxalt v. McClatchy</u>, 116 F.R.D. 455 (D. Nev. 1986) (<u>Laxalt II</u>). Neither case cites section
463.3407 or section 49.025.

***4. Effect of Errors Alleged by Adelson With Regard to the Subpoena Compliance Order***

Adelson argues the court misapplied the law in entering the Subpoena Compliance Order. Adelson alleges: (1) Smith was required to demonstrate that the Board was the exclusive source of the information sought in the Motion to Compel; (2) even if Smith was not required to show the Board was the exclusive source of the information sought, Smith was required (and failed) to make a showing, with particularity, that an objectively reasonable discovery process was performed and it was objectively necessary to turn to the Board for the information sought; (3) the court erred in its interpretation of the privilege granted by section 463.3407 of the Nevada Code; and (4) the transcript of the Board's hearing on the Application obviated the need for the documents requested in the Motion to Compel, and moreover, the court erred in its consideration of this transcript. Adelson alleges each of these errors positively affect the probability of Adelson's success on the merits of his appeal. The court considers these arguments in turn.

***i. Adelson's Assertion That Smith Must Demonstrate That Information Sought***
***From the Board Is Not Available Anywhere Else***

Adelson argues that Smith must demonstrate that information sought from the Board is not available *anyplace* else before he is entitled to compel production of documents in the custody of the control board. Pl. Mot., pp. 5-7; Pl. Mot., p. 6:18:20 ("The Bankruptcy Court was required to take evidence and make explicit findings that invading the [Board's] governmental privileges were the *only* means to secure evidence on the facts at issue.") (Emphasis added). The court disagrees with Adelson's contention that the court may not order production unless the control board is the exclusive source from which the information may be obtained, and therefore does not believe this argument increases Adelson's probability of success on appeal.

The statute governing production of the Board's records does not articulate Adelson's asserted exclusive source requirement. The statute, NEV. REV. STAT. § 463.341, titled "Order of Court for Release of Confidential Information: Procedure," states:

> An application to a court for an order requiring the Board or the Commission to release any information declared by law to be confidential shall be made only upon motion in writing on 10 days' written notice to the Board or Commission, the Attorney General and all persons who may be affected by the entry of such order. Copies of the motion and all papers filed in support of it shall be served with the notice by delivering a copy in person or by certified mail to the last known address of the person to be served.

Presumably, had the Nevada legislature wanted to impose such a strict exclusive source requirement, it would have done so in this procedural requirement statute.

Case law also does not support Adelson's exclusive source argument. As explained in the Subpoena Compliance Opinion, the relevant disclosure inquiry involves the application of a four-part test. See Subpoena Compliance Opinion, p. 10:3-10; see also Laxalt v. McClatchy (*Laxalt II*), 116 F.R.D. 455, 459 (D. Nev. 1986) (citing FTC v. Warner Commc'ns., Inc., 742 F.2d 1156, 1161 (9th Cir. 1984). The test is as follows:

> Initially, the relevance of the evidence must be taken into account. Further, the availability of other evidence and the government's role in the litigation must be considered. Finally, the court noted that the extent to which disclosure would hinder frank and independent discussion regarding the agencies contemplated decisions and policies would factor into the court's decision.

Laxalt II, 116 F.R.D. at 459. Adelson's attempt to recast one factor, "the availability of other evidence" as an exclusive source requirement that stands as an absolute precondition to disclosure is unpersuasive. Adelson cites no authority for such a proposition. Accordingly, the court will not read such a precondition into the Ninth Circuit's test.

Another problem with Adelson's exclusive source argument is that it would prevent courts from ever ordering the release of documents that, like some of the information in the Application, primarily contain information compiled from other sources. That would seem illogical, given that the confidentiality concerns are arguably less when there is a collateral source that holds the information. Adelson admitted at the October 27 hearing that he could foresee at least one scenario in which a defendant could obtain a compilation-type document from the Bboard (which was

12

arguably an admission that no exclusive source requirement exists). This lead to Adelson's making the arguments discussed in the next section of this opinion.

The court is not persuaded that the test for disclosure of documents held by the Board includes a requirement that the party seeking disclosure prove that the information if available from no other source, especially in cases such as this in which issues of reputation are relevant. The court does not believe this argument has merit, and therefore gives it little weight in determining Adelson's probability of success on appeal and the decision to grant the requested relief.

### ii. Allegation That Smith Failed to Make the Required Showing of Need Relating to Documents Held by the Board

Adelson argues that even if Smith was not required to show that the Board was the exclusive source of the information sought, Smith was required to make a showing, with particularity, that an objectively reasonable discovery process was performed and the Board is the only objective source of the information sought. Adelson alleges that Smith failed to make this showing. Adelson has not demonstrated that this is the required showing, and even if Adelson is correct about the required showing, Smith has made this showing.

Adelson cites United States v. Leggett & Platt, Inc., 542 F.2d 655, 658 (6th Cir. 1976) for the proposition that a party may override a governmental interest in secrecy or confidentiality only by showing an objective need. This case dealt with investigatory files of a government agency. Id. at 657. Adelson has not demonstrated that this is the standard to be applied under the circumstances of this case and under the law of this circuit, but for purposes of this Motion for Stay, the court will assume this is the correct standard.

Smith has met the objective need standard. As the court explained in the Subpoena Compliance Opinion, this proceeding has involved an extensive amount of procedural wrangling. Both parties have fought hard to gain every advantage they are entitled to and discover every bit of information available to them. Smith's counsel has used sufficient discovery tools to satisfy the court that the ordering disclosure of the information in the possession of the Board was proper. Adelson has

submitted a litany of facts in the documents accompanying his Motion for Stay in an attempt to convince the court that Smith should have engaged in other discovery procedures before seeking the relief requested in the Motion to Compel. The court first notes that at this stage, these facts are irrelevant. If Adelson wanted the court to consider these facts, Adelson should have submitted them to the court in connection with the hearing on the Motion to Compel. Second, even if Adelson had submitted these facts to the court in a timely fashion, they would not have altered the court's decision on the Motion to Compel. Smith had an objective, reasonable need for the information held by the Board.

Therefore, the court is not persuaded that Adelson has a likelihood of success on the merits of his appeal as a result of any alleged mistake regarding this court's Subpoena Compliance Order and the burden Smith needed to meet to be entitled to prevail at the Motion to Compel. Therefore, the court will take this into consideration in its decision on the Motion for Stay.

### iii. Allegation That the Court Erred in Interpreting the "Absolute Privilege"

Adelson argues that the court improperly construed the absolute privilege that was asserted by the Board and that this alleged error of law contributes to his chances of success on appeal. Adelson alleges that the court disregarded relevant case law and applied an overly narrow construction to NEV. REV. STAT. § 463.3407.

Hampe v. Foote, 118 Nev. 405, 47 P.3d 438 (2002), cited by Adelson, is a case that specifically discusses the privilege granted by section 463.3407. Id. at 407. The case involved claims of libel, defamation, malicious prosecution and intentional infliction of emotional distress caused by a letter of complaint sent to the Board by Elizabeth Foote and her business partner, Betty Boal (owners of a gaming establishment). Id. at 407. Stephen Hampe (also the owner of a gaming establishment) based his various tort claims on this letter–a communication made to the Board. Id.

The Nevada Supreme Court, citing section 463.3407, rejected Hampe's contentions that such a letter could stand as the basis for tort liability. Id. at 409. The court stated that the Nevada legislature had crafted a "broad statutory privilege" for these types of communications. Id. at 408. In the words

of the court, "[t]he privilege expressly encompasses any communication made by a licensee or applicant to assist the Gaming Control Board or Gaming Commission in the performance of their respective duties. . . . The statute further provides that *such* communications cannot be a ground for liability in any civil action." Id. at 408-09 (emphasis added).

The interpretation of a Nevada state law by the Nevada Supreme Court, the highest court in this state, is binding on this court. See Olympic Sports Products, Inc. v. Universal Athletic Sales Co., 760 F.2d 910, 912-13 (9th Cir. 1985). This court's interpretation of Nev. Rev. Stat. § 463.3407 is fully in accordance with the interpretation of the Nevada Supreme Court in Hampe. The Subpoena Compliance Opinion acknowledged the strong interest of the state and the breadth of the privilege. Adelson's arguments in the Motion for Stay misconstrue the privilege.[9] In this case, section 463.3407 prevents any statement made in the Application from giving rise to liability. Nevada has recognized this privilege is necessary so that applicants and those contacted by the Board can speak freely, without fearing that a court will scrutinize the communication later. See id. at 409.

Here, Smith is not seeking the Application to prove liability–he is seeking to establish that what he wrote was true even if he did not have the facts at hand at the time he wrote the book. In such a case, if appropriate safeguards can be arranged, it is proper to allow disclosure. Laxalt v. McClatchy, 109 F.R.D. 632, 635 (D. Nev. 1986) ("In a libel action, where the records may well go to the heart of material factual issues, the benefits [of disclosure] usually outweigh the confidentiality interests.").

The court is not convinced that section 463.3407 was enacted to allow defamation plaintiffs to hide facts that may stand in derogation of their chances for relief. The court is not persuaded that it misapplied the law with respect to section 463.3407. Therefore, the court does not believe this argument increases Adelson's probability of success on appeal, and accordingly gives it little weight in the decision on the Motion for Stay.

_____

[9] At the October 27 hearing on the Motion for Stay, Adelson's counsel seemed to acknowledge his error in interpreting section 463.3407. However, the court believes it remains necessary to address this argument because it was featured so prominently in Adelson's Motion for Stay papers.

*iv. Alleged Failure of the Court to Consider the Existence of the Public Transcript*
*From the Board's Hearing on the Application*

Adelson has alleged that the existence of the public transcript from the Board's hearing on the Application ("Transcript") somehow obviates the need for disclosure of the Application, and the court erred in failing to consider the Transcript. This argument misconstrues the record and the history of events in this proceeding.

Throughout this litigation, Smith has been aware of the Transcript. According to Smith, he relied on the Transcript when making the allegedly libelous assertions in his book. Def. Rep. to Pl. Mot., p. 7:6-8. After reviewing the Transcript, Smith's counsel believed that documents held by the Board–the Application and the Report–might contain information that would establish the truth of the statements in Smith's book and thereby serve as an absolute defense to Adelson's libel action. See Subpoena Compliance Opinion, pp. 3:1-13; see also Sept. 30 TR, pp. 12:1-14:23; 18:3-10. Thus, the Transcript is not a substitute for the documents sought by the Motion to Compel. Rather, the Transcript is partially what motivated Smith to file the Motion to Compel (the motion was also motivated by Adelson's nonresponsive answers to deposition questions posed by Smith's counsel). Therefore, the existence of the Transcript does not obviate the need for disclosure of the documents ordered produced in the Subpoena Compliance Order. At most, it is evidence that other relevant documents exist and might contain information relevant to this case.

Additionally, when the court weighed the four factors enunciated in Laxalt II, it was well aware of the Transcript, which it  remarked on at the hearing. Sept. 30 TR, p. 26:7-14. As discussed in Part A.4.i of this opinion, the fact that some information contained in the documents that were the subject of the in camera review duplicated information contained in the Transcript is not an absolute bar to the court's ability to compel the production of the documents in the Board's custody.

Next, the court was not required to make an independent examination of the Transcript. Adelson cites no authority for such a proposition. Adelson's counsel made no arguments at the hearings on the Motion to Compel that the Board documents should not be subject to an in camera

16

review because all information contained in those documents could be found in the Transcript or because the court had not reviewed the Transcript. More importantly, at no point did Adelson's counsel object to a particular disclosure on the basis that information ordered disclosed was available in the Transcript. Without any objection, or any guidance as to where the requested information was already to be found, in the Transcript, the court was entitled to rely on Smith's counsel's assertion of need, especially in light of Adelson's uncertain memory at his deposition.

Therefore, the court does not believe the existence of the Transcript or the court's treatment of that Transcript increases Adelson's probability of success on appeal in any way. The court has taken this into account in its decision on the Motion for Stay.

The court has reviewed all of Adelson's arguments regarding the likelihood that Adelson will succeed on the merits of his appeal. The court does not believe the Adelson has carried his burden on this first element, which is necessary for him to prevail on his Motion for Stay. The court has taken this into consideration in its decision on the Motion for Stay.

### B. Irreparable Injury to Adelson

The second element the court must consider in making a determination on Adelson's Motion for Stay is whether Adelson will suffer irreparable injury if the stay is not granted. In order to obtain a stay, Adelson must demonstrate a "reasonable likelihood of future injury." See Bank of Lake Tahoe v. Bank of Am., 318 F.3d 914, 918 (9th Cir. 2003) (discussing issuing prospective injunctions). Often, in the context of the appeal of a discovery order, the movant can make a strong showing of irreparable injury because once the allegedly privileged documents are disclosed, a reviewing court cannot provide effective relief. Bank of Am. v. Feldman (In re Nat'l Mortg. Equity Corp. Mortg. Pool Certificates Litig.), 821 F.2d 1422, 1424 (9th Cir. 1987) ("Any evidentiary privilege . . . is liable to being irretrievably breached once the material for which the privilege is claimed has been disclosed."). However, the circumstances of this case do not make this element so clear cut.

In this case, counsel for Smith saw the documents ordered to be produced by the Subpoena

Compliance Order at the in camera review. To the extent that knowledge conveyed by merely reading these pages caused an injury, that injury has already occurred and cannot be remedied. The attorneys who viewed the documents at the in camera review were under no obligation to refrain from discussing the substance of the documents with their clients, and the court must presume that in the course of diligent representation, such a discussion has occurred.

Adelson could have prevented this injury. As the court discussed in part A.1 of this opinion, because of the interlocutory nature of discovery orders, at no point did Adelson have an absolute right to appeal. See Newton, 726 F.2d at 592. However, if Adelson really believed an irreparable injury would occur as a result of the Application and the Report being disclosed to Smith, Adelson could have sought review of this court's October 7, 2008 "Order After Hearing" (doc. 117). This is the order that granted the in camera review. By failing to seek review of this order, Adelson allowed an irreparable injury to occur. In the words of Adelson's counsel, "The toothpaste is out of the tube." No court can fashion a remedy that will cause Smith's counsel to unlearn the contents of the documents he viewed at the in camera review.

Therefore, the only future injury that is possible is disclosure to parties other than Smith or Smith's counsel. This injury is not likely, given the agreement reached between the parties. The Subpoena Compliance Order refers to a stipulation placed on the record at the October 10 hearing that followed the in camera inspection. See Subpoena Compliance Order; see also Oct. 10 TR, pp. 11:5-13:11. That stipulation has since been reduced to writing, signed by the parties and the Board, and was entered as an order of this court on October 24, 2008 (doc. 156). The stipulation prevents any documents ordered produced in the Subpoena Compliance Order from leaving the custody and control of the attorneys for the parties. It prevents copies from being made and provides for the return of the documents to control board custody at the conclusion of these matters. During the trial, that parties have agreed that any party seeking to use one of the documents must take all reasonable steps to maintain its confidentiality, including requesting the court to allow the document to be admitted only under seal.

Adelson has not provided any evidence that indicates the conditions stated in the stipulation are likely to be breached by the parties.[10] Adelson's arguments have not persuaded the court that there is a reasonable likelihood that a future irreparable injury will occur if the Motion for Stay is not granted. As such, Adelson has not carried its burden on the element of irreparable injury. The court has considered the lack of evidence on this element in its decision on the Motion for Stay.

### C. Injury to Defendant

The third element the court must consider in making a determination on Adelson's Motion for Stay is the injury such a stay will cause Smith. The injury Smith will suffer if the stay is granted is additional expense, possible prejudice with regard to the trial in this proceeding, and the possibility that the trial date must be pushed back, resulting in prolonging the debtor's pending bankruptcy case.

Mr. Smith has been a debtor in the bankruptcy court since his case was filed more than a year ago, on October 10, 2007. He is an individual debtor with limited means. If the court grants the stay, it will interfere with Smith's counsel's ability to prepare for trial. This could lead to one of two possibilities. First, Smith's counsel will be rushed and not have sufficient time to investigate the matters revealed by the documents ordered produced in the Subpoena Compliance Order. This could prejudice Smith at trial, and potentially result in a denial of due process. Second, Smith's counsel may be forced to request that the trial be postponed so that an adequate investigation may be undertaken. This will result in Smith's discharge being further delayed. As explained in the next section, this is a private as well as a public harm, and it is not one the court will inflict on Smith.

The court recognizes that this harm, while significant, is not the most grievous harm that a debtor might suffer as a result of the delay of a stay pending appeal. However, in weighing the elements to be considered in the stay pending appeal context, the court must consider the relative

---

[10] Of course, if the stipulation was breached, the breaching party would be subject to the court's contempt powers, since the stipulation was incorporated into the Subpoena Compliance Order as well as being entered as a separate order.

harm the parties will suffer. Here, there is actual harm that Smith will suffer if a stay is granted, compared to a complete lack of harm that Adelson will suffer is a stay is not granted. The court will give these elements due consideration in its decision on the Motion for Stay.

### D. The Public Interest

Adelson has asserted that the "public interest" factor weighs solely toward issuing a stay pending appeal. Adelson asserts the public confidence and trust of the citizens of the State of Nevada is the relevant public interest. While Adelson is correct that this is in important public interest, the court disagrees with the weight that Adelson assigns to this factor and that it is the only public interest that is relevant.

In Nevada, there is an important public interest in preserving confidence and trust in the Nevada gaming licensing process and the Nevada Gaming Control Board itself. This interest is embodied in NEV. REV. STAT. § 463.0129.1, which states:

> The Legislature hereby finds, and declares to be the public policy of this state, that:
> (a) The gaming industry is vitally important to the economy of the State and the general welfare of the inhabitants.
> (b) The continued growth and success of gaming is dependent upon public confidence and trust that licensed gaming and the manufacture, sale and distribution of gaming devices and associated equipment are conducted honestly and competitively, that establishments which hold restricted and nonrestricted licenses where gaming is conducted and where gambling devices are operated do not unduly impact the quality of life enjoyed by residents of the surrounding neighborhoods, that the rights of the creditors of licensees are protected and that gaming is free from criminal and corruptive elements.
> (c) Public confidence and trust can only be maintained by strict regulation of all persons, locations, practices, associations and activities related to the operation of licensed gaming establishments, the manufacture, sale or distribution of gaming devices and associated equipment and the operation of inter-casino linked systems. . . .

When the court issued its Subpoena Compliance Opinion after the in camera review, it explicitly recognized this interest. See Subpoena Compliance Opinion, pp. 10-11. The court discussed the process used to ensure that the interests of the parties were properly protected and

balanced. See id. Moreover, the court notes that the Board did not join, and has not joined, Adelson's appeal or the Motion for Stay. This is persuasive evidence this interest was properly protected, otherwise the Board, as it has in other cases, would have sought to vindicate the state's policies. The court notes that at the initial hearing on the Motion for Stay, when asked for the control board's position on the Motion for Stay, counsel for the board stated that "the Board wishes to remain neutral on this matter." The board's subsequent lack of legal action relating to these matters indicates to the court that it believes the public interest was properly protected by the in camera review process.

Additionally, the fact that only portions of the Application were ordered produced, and no portion of control board's  Report was ordered produced supports the conclusion that the state's confidentiality interest has been adequately protected. Therefore, having reviewed and reconsidered the process employed at the in camera review, the court finds the important public interest of confidence and trust in the control board and the gaming licensing process was properly protected.

There is another public interest that the court is bound to take into consideration in deciding on the Motion for Stay. There is a great public interest in the efficient administration of the bankruptcy system. As the United States Supreme Court has explained:

> The federal system of bankruptcy is designed not only to distribute the property of the debtor, not by law exempted, fairly and equally among his creditors, but as a main purpose of the act, intends to aid the unfortunate debtor by giving him a fresh start in life, free from debts, except of a certain character, after the property which he owned at the time of bankruptcy has been administered for the benefit of creditors. Our decisions lay great stress upon this feature of the law-as one not only of private but of great public interest in that it secures to the unfortunate debtor, who surrenders his property for distribution, a new opportunity in life.

Stellwagen v. Clum, 245 U.S. 605, 617 (1918). In the present case, the pending adversary proceeding brought by Adelson is one of two impediments preventing Smith from receiving a discharge and exiting the bankruptcy system (the other being another adversary proceeding, which is set for trial). It is in the public interest for this court to take steps to facilitate the resolution of the

controversy between the parties and allow Smith to receive all of the relief he is entitled to under the Bankruptcy Code. Therefore the court gives due weight to the interest of the public in facilitating the debtor's discharge.

The court has considered all relevant public interests in weighing this fourth element of its decision of the Motion for Stay.

### CONCLUSION

The court has throughly reviewed each of Adelson's contentions in the Motion for Stay and considered each of the four relevant elements required before such a motion may be granted. The Adelson has not met his burden of showing a probability of success on appeal.[11] The court likewise does not believe any irreparable injury will occur if the stay is not granted. On the contrary, the court finds that if the stay is granted, Smith will suffer injury. Finally, the court believes the control board 's interest has been adequately protected by the safeguards detailed in the Subpoena Compliance Opinion and, having considered the public interest in the efficient functioning of the bankruptcy system, the court believes this fourth element favors Smith.

The Motion for Stay is denied. As stated in the "Order Amending 'Order Regarding Production of Nevada Gaming Control Board Records'" (doc. 143), the Gaming Control Board must turn over the documents ordered produced in the Subpoena Compliance Order, which is hereby amended to require production to Smith's counsel by close of business on Friday, October 31, 2008.


IT IS SO ORDERED


Copies sent to:

---

[11] The court notes that even if it did not consider the variety of procedural infirmities that infect Adelson's appeal, the court's decision on the first element, probability of success on the merits of the appeal, would not change. Adelson has not demonstrated any evidence that would persuade the court that Adelson has a probability of success on appeal.

1

2   DONALD J CAMPBELL lucinda@campbellandwilliams.com,
    djc@campbellandwilliams.com;mary@campbellandwilliams.com

3   RYAN A LOOSVELT rloosvelt@duanemorris.com, dcanderson@duanemorris.com;

4   jldailey@duanemorris.com;tgflangas@duanemorris.com

5   RICHARD MCKNIGHT mcknightlaw@cox.net, gkopang@lawlasvegas.com;

6   cburke@lawlasvegas.com;eseverino@lawlasvegas.com

7   DAVID J. POPE dpope@ag.nv.gov, dturman@ag.nv.gov

8   DOMINICA C. ANDERSON

9   DUANE MORRIS LLP
    701 BRIDGER AVENUE, SUITE 670
10  LAS VEGAS, NV 89101

11  MARTIN D. SINGER
    2049 CENTURY PARK EAST #2400
12  LOS ANGELES, CA 90067

13  CATHERINE CORTEZ MASTO
    555 EAST WASHINGTON AVENUE
14  SUITE 3900
    LAS VEGAS, NV 89101
15
                                    # # #
16

17

18

19

20

21

22

23

24

25

26